IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Rachna J. Patel, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-0298 ERIE |
| ) | |
| Saint Vincent Health Center, ) | |
| ) | |
| Defendant. ) | |

# **MEMORANDUM OPINION[1]**

This matter is before the Court upon Plaintiff Rachna Patel's ("Plaintiff's") Motion for Preliminary Injunction. Doc. No. 2. In her preliminary injunction motion, Plaintiff alleges that Defendant Saint Vincent Health Center ("SVHC") terminated her employment in the SVHC Osteopathic Emergency Medicine Residency Program ("SVHC Residency Program") in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"). Plaintiff seeks a Court Order directing Defendant to reinstate plaintiff into the SVHC Residency Program. In the underlying Complaint, filed concurrently with her preliminary injunction motion, Plaintiff also seeks monetary damages for lost income as a resident, lost income as an emergency medicine physician, and attorneys' fees and costs.

---

[1] This Opinion was drafted under the direction of then Chief Judge McLaughlin, who reviewed it prior to his resignation. The Court has revised the Opinion after a careful review of the record, as set forth in the Certification filed at doc. no. 32. The Court is not bound by the draft that Judge McLaughlin had prepared. *See Havey v. Kropp*, 458 F.2d 1054, 1055–56 (6th Cir. 1972); *cf. Mergentime Corp. v. Wash. Metro. Area Transit Auth.*, 166 F.3d 1257, 1263–64 (D.C. Cir. 1999) (successor Judge had duty to reconsider rulings of prior Judge). The Court performed a *de novo* review of the record and agreed with the findings of fact and conclusions of law drafted by then Chief Judge McLaughlin. Accordingly, this Court finds that this case is one of the "limited circumstances" in which Rule 63 contemplates a successor Judge making findings of fact and conclusions of law based upon the record. *See Mergentime*, 166 F.3d at 1266 (quoting Fed. R. Civ. P. 63 advisory committee's note); *see also Canseco v. United States*, 97 F.3d 1224, 1227 (9th Cir. 1996).

A preliminary injunction hearing was held on May 13, 2013 before then Chief Judge McLaughlin. This Court has jurisdiction pursuant to 29 U.S.C. § 2601 and 28 U.S.C. §§ 1331 and 1334(a)(4). For the reasons which follow, the Motion for Preliminary Injunction (doc. no. 2) will be DENIED.

**I. Findings of Fact**

The facts underlying the instant action concern Plaintiff's enrollment and subsequent termination from a four-year medical residency program operated by SVHC, a health care provider located in Erie, Pennsylvania. See Defendant's Revised Proposed Findings of Fact and Conclusions of Law, Doc. No. 21, ¶2 ("Defendant's Proposed Findings"). Plaintiff was admitted as a resident to the SVHC Residency Program in July 2009, with an initial enrollment term extending from July 1, 2009, through June 30, 2010. Id. at ¶3; Hearing Tr., 112.[2] The term of Plaintiff's second year residency appointment extended from July 1, 2010, through June 30, 2011. Defendant's Proposed Findings at ¶4.

In order to advance to the third year of the residency program, SVHC residents are required to demonstrate proficiency in seven "core competencies" and to pass the Level III Comprehensive Osteopathic Medical Licensing Examination (the "COMLEX"). Id. at ¶5; Hearing Tr. 121. During her second term, however, Plaintiff's academic performance began to suffer. Hearing Tr. 117. In October 2010, the Resident Program Director, Dr. Matthew T. McCarthy, held a meeting with Plaintiff to address several of the academic and clinical deficiencies identified by members of the residency program. Defendant's Proposed Findings at ¶8; Hearing Tr. 117-18. In April 2011, Plaintiff advised Dr. McCarthy that she had failed the COMLEX. Hearing Tr. 121. Dr. McCarthy placed Plaintiff on a performance improvement plan

---

[2] References to the May 13, 2013 hearing transcript (doc. nos. 20, 20-1, 20-2, 20-3, and 20-4) will use the following format: "Hearing Tr. XX."

to address her deficient performance and advised her that she would be placed on an academic leave of absence if she was unable to pass the COMLEX by June 30, 2011. Defendant's Proposed Findings at ¶¶10-11; Hearing Tr. 119-120, 126, 212.

On June 1, 2011, near the end of her second residency term, Plaintiff requested FMLA leave time to treat a heart condition known as supraventricular tachycardia. Defendant's Proposed Findings at ¶12; Defendant's Ex. 7; Hearing Tr. 189. SVHC approved Plaintiff's request and granted leave from June 1, 2011, through June 26, 2011. Defendant's Ex. 2. The FMLA leave request form signed by Plaintiff acknowledged that she would be terminated if she "[did] not return to work after the expiration of [the] leave." Hearing Tr. 194; Defendant's Ex. 2.

On June 23, 2011, Plaintiff underwent a heart ablation procedure performed by Dr. Jaydutt Patel ("Dr. Patel"), a board certified cardiac surgeon. Hearing Tr. 29-34. Following her surgery, Dr. Patel prepared a discharge summary for Plaintiff indicating that she "may return to work after 3 days" (i.e., June 27, 2011). Hearing Tr. 43-44. The discharge summary also ordered Plaintiff to follow-up with her primary care physician in one to two weeks and to follow-up with Dr. Patel on July 22, 2011. Hearing Tr. 43-44; Defendant's Ex. 28.

Plaintiff initially accepted the decision by the human resources staff at SVHC to grant her FMLA leave through June 26, 2011, consistent with Dr. Patel's discharge summary. Hearing Tr. 48, 194. However, on June 27, 2011, Plaintiff contacted SVHC's human resources director to request an indefinite extension of her leave as the result of continued heart palpitations. Hearing Tr. 199, 222. On July 11, 2011, the SVHC human resources department sent Plaintiff a letter informing her that she needed to obtain an extension from her treating physician. Hearing Tr. 158-60, 201, 204, 224; Plaintiff's Ex. 7. On July 13, 2011, SVHC human resources again contacted Plaintiff requesting recertification of her need for continued medical leave. Hearing

Tr. 224. On July 18, 2011, SVHC human resources sent a follow-up email stating, "Rachna, we need your treating physician to fax a statement extending your medical leave until the end of July." Hearing Tr. 161-63, 205-06, 225; Defendant's Ex. 2. Despite receiving these notifications, Plaintiff failed to obtain or provide recertification of her condition until after she was eventually terminated. Hearing Tr. 161, 226.

Despite her ongoing heart palpitations, Plaintiff never contacted a physician or nurse, as instructed in Dr. Patel's discharge summary, and cancelled her July 22, 2011, post-surgery follow-up appointment with Dr. Patel. Hearing Tr. 196-97, 203-04. Plaintiff acknowledged that, as of July 22, 2011, no physician had authorized her to be off work. Hearing Tr. 207.

On July 28, 2011, Plaintiff called Dr. Patel's office seeking certification to extend her leave for the time period that had elapsed since her surgery. Hearing Tr. 207-08. Dr. Patel's office staff indicated that they would not provide any such statement. Hearing Tr. 209. Plaintiff contacted Dr. Patel's office again several times between July 29, 2011, and August 1, 2011, seeking to speak directly with Dr. Patel. Hearing Tr. 210. However, Dr. Patel concluded that there was no medical necessity for additional leave and, consequently, denied the requested recertification. Hearing Tr. 55, 58-59, 210-11.

In the meantime, Plaintiff took the COMLEX for the second time on July 26, 2011, and received a passing score. Hearing Tr. 146, 212. She testified that one of the things that she had done at home following her surgery was to study for the COMLEX. Hearing Tr. 211.

On August 1, 2011, SVHC dismissed Plaintiff from the residency program based upon her unauthorized leave of absence and her failure to return to work on June 27, 2011. Hearing Tr. 100, 132, 211; Defendant's Ex. 5. On or about August 3, 2011, Plaintiff was examined by Dr. Joan M. Orloski, a physician located in Duryea, Pennsylvania, near where Plaintiff was

4

staying following her surgery. Hearing Tr. 213-14. Dr. Orloski is not a cardiologist, does not perform ablation surgeries, and examined Plaintiff only once. Hearing Tr. 213. Based upon this examination, Dr. Orloski wrote a letter to SVHC indicating that she "agree[d] with [Plaintiff's] decision to return to her studies as of August 1, 2011." Hearing Tr. 214.

At some point during the fall of 2012, Plaintiff filed a complaint against Dr. Patel with the Pennsylvania Department of State alleging that she had not received proper follow-up care after her surgery. Hearing Tr. 60, 216. Following an investigation, the Department of State cleared Dr. Patel of any wrongdoing. Hearing Tr. 60.

In December 2012, Plaintiff obtained her physician's license in California and commenced part-time work in a general practice clinic. Hearing Tr. 216-18. Plaintiff testified that she is unable to find a better position because she is not eligible to be board certified. Hearing Tr. 218.

## II. Conclusions of Law

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). In determining whether to grant a preliminary injunction

> a district court must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Iles v. Dejongh*, 638 F.3d 169, 172 (3d Cir. 2011) (citing *McTernan v. City of N.Y.*, 577 F.3d 521, 526 (3d Cir. 2009)). A preliminary injunction can issue "only if all four factors favor

5

preliminary relief." *The Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000). The Court will consider each factor in turn.

    A. <u>Success on the Merits</u>

In order to demonstrate a reasonable probability of success on the merits, a plaintiff must establish a *prima facie* entitlement to relief by producing sufficient evidence to satisfy the essential elements of the underlying cause of action. *See Punnett v. Carter*, 621 F.2d 578, 582–83 (3d Cir.1980). With respect to a claim pursuant to the FMLA, as in the instant case, an employee must demonstrate that she was entitled to benefits under the FMLA and that she was denied those benefits. *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) (citing *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005)). In broad brush, the FMLA provides that eligible employees "shall be entitled to a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may require that a request for leave be supported by a certification from a health care provider. 29 U.S.C. § 2613.

It is undisputed that Plaintiff was granted an initial period of FMLA leave from June 1, 2011, through June 26, 2011. The crux of the underlying dispute concerns whether Plaintiff was entitled to (and properly requested) additional FMLA leave for the period of time between her anticipated return to work on June 27, 2011, and her termination from the residency program on August 3, 2011. In order to establish a likelihood of success on the merits, Plaintiff must demonstrate that she was entitled to FMLA leave benefits for that time period and was improperly denied those benefits by SVHC.

6

In support of her claims, Plaintiff testified at the hearing that she continued to experience heart palpitations following her ablation procedure and that she was concerned that her symptoms might threaten a patient's safety if she were to return to work. Plaintiff also presented the testimony of Dr. Henry L. Weiner, a board-certified cardiologist and clinical electrophysiologist with over 20 years of experience performing heart ablation procedures. Hearing Tr. 69. Dr. Weiner opined that Dr. Patel's discharge instructions were unrealistic in light of Plaintiff's clinical history and job function. Hearing Tr. 70-71. Dr. Weiner testified that recurrent or residual symptoms may occur following an ablation procedure and explained the distinction between a procedural success, where a surgery ends successfully, and a clinical success, where a patient remains symptom free over a long period of time. Hearing Tr. 70-73.

The efficacy of Dr. Weiner's testimony is limited, however, by several factors. As an initial matter, Dr. Weiner acknowledged that he has never examined or even spoken with Plaintiff. Hearing Tr. 74-75. Rather, his medical opinions were based entirely upon an examination of Plaintiff's medical records, including the letter authored by Dr. Orloski, and what he referred to as "difference[s] in practice strategy." Hearing Tr. 75-77, 80, 213. Dr. Weiner conceded that there was nothing in Plaintiff's medical records to indicate that Plaintiff had actually experienced any recurring symptoms or complications following her surgery. Hearing Tr. 75. He also acknowledged that it is highly recommended for ablation patients to follow up with their treating physicians, particularly if re-evaluation is necessary because of recurrent symptoms. Hearing Tr. 81-82. Because Plaintiff failed to seek additional medical care for her condition or attend her scheduled follow-up appointments, Dr. Weiner lacked the type of medical corroboration required for him to testify with any specificity concerning Plaintiff's post-surgery condition.

The letter from Dr. Orloski, sent following Plaintiff's termination, suffers from similar deficiencies. As noted above, Dr. Orloski is not a cardiologist, does not perform ablation procedures, and examined Plaintiff only once, upon Plaintiff's request, in order to confirm Plaintiff's self-diagnosed inability to return to work following her surgery. Hearing Tr. 213-14. Dr. Orloski's letter makes clear that her opinion is based entirely upon representations from Plaintiff concerning her condition and general information contained in medical literature. Plaintiff's Ex. 4.

In short, none of the testimony and evidence submitted by Plaintiff in support of her preliminary injunction motion is based upon an actual examination of the Plaintiff during the relevant time period. Moreover, Plaintiff's evidence is further rebutted by the testimony of Dr. Patel, the surgeon who performed Plaintiff's surgery, who opined that her heart ablation surgery was a "success" with "an excellent result" and "no complications." Hearing Tr. 42, 44. Dr. Patel also stated that Plaintiff's procedure was completed in less than the normal amount of time and that, in his view, there was "no medical reason" for Plaintiff to take additional time off of work. Hearing Tr. 45, 52.

Finally, even if the Court were to assume, *arguendo*, that Plaintiff's medical condition was sufficiently impaired following her surgery to warrant additional FMLA leave, it is undisputed that she failed to provide SVHC with any recertification of her condition, as requested. The FMLA explicitly permits an employer to "require that a request for leave . . . be supported by a certification issued by the health care provider of the eligible employee . . . in a timely manner." 29 U.S.C. § 2613(a). Plaintiff has not provided any compelling evidence to adequately explain her failure to seek and obtain recertification of her condition in a timely manner.

Based on the foregoing, the Court concludes that Plaintiff has failed to establish a *prima facie* case of interference with her FMLA rights because she has not established that she properly requested and was entitled to leave during the relevant time period. *See, e.g., Callison,* 430 F.3d at 119 (requiring an employee to establish entitlement to benefits under the FMLA). Although her failure to establish a likelihood of success on the merits is fatal to her request for a preliminary injunction, the Court, in the interests of a thorough and complete review, will proceed to examine the remaining factors.

B. <u>Irreparable Harm</u>

The second factor requires a plaintiff seeking an injunction to demonstrate a "clear showing of immediate irreparable injury." *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir.1980). The "requisite feared injury or harm must be irreparable - not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it." *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir.1977). In other words, a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial; the preliminary injunction must be the only way of protecting the plaintiff from harm. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Plaintiff contends that, in the absence of injunctive relief, she will be irreparably harmed because she will not be able to gain admission to another residency program specializing in emergency medicine. Patel Decl. ¶15; Hearing Tr. 98. Consequently, she will be ineligible to take the Board Certification Exam in Emergency Medicine or obtain a position as an emergency medicine physician. Patel Decl. ¶15. She also suggests that, in the absence of preliminary relief, her clinical skills will deteriorate as the result of the interruption in her training. Patel Decl. ¶13.

9

Despite Plaintiff's assertions, the Court concludes that this factor vitiates against an award of injunctive relief. As an initial matter, the 16-month delay between Plaintiff's termination from the SVHC Residency Program and her initiation of this action undermines her assertion that irreparable harm is imminent. *See, e.g., Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1092 n.27 (3d Cir. 1984) ("The district court may legitimately think it suspicious that the party who asks to preserve the *status quo* through interim relief has allowed the *status quo* to change through unexplained delay."); *Quad/Tech, Inc. v. Q.I. Press Controls B.V.*, 701 F.Supp.2d 644, 657 (E.D. Pa. 2010) (holding that a 14-month delay in seeking injunctive relief "undercuts the urgency that forms the cornerstone of injunctive relief; indeed, this delay indicates a lack of urgency"). Moreover, although Plaintiff has testified that she has been unable to find a spot in another emergency medicine residency program, she has failed to adequately explain why the potential for equitable reinstatement to the emergency medicine program at SVHC and/or monetary relief following a trial would be an inadequate remedy. Her own delay in seeking judicial relief, and her ability to obtain employment as a licensed physician in California while pursuing the instant lawsuit, each factor against the need for the "extraordinary remedy" of preliminary relief. *See Winter*, 555 U.S. at 22.

C. <u>Harm to Nonmoving Party</u>

In considering this factor, the Court "must undertake to balance the hardships to the respective parties." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998). Unlike each of the previous two prongs of the preliminary injunction test, this factor appears to slightly favor Plaintiff. While her immediate reinstatement to the SVHC Residency Program would likely be inconvenient for SVHC, there is no evidence to suggest that it would create an enormous burden or undue hardship.

D. <u>Public Interest</u>

The final factor considers "whether there are policy considerations that bear on whether the order should issue." 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane § 2948.4 at 200–01 (2d ed. 1995). In the instant case, the Court finds that this factor is neutral. Although there is a strong public interest in favor of protecting FMLA rights, Plaintiff has failed to make a *prima facie* showing that her FMLA rights were improperly denied.

### III. Conclusion

After careful consideration of each of the four pertinent factors, the Court concludes that Plaintiff has failed to demonstrate the need for preliminary relief. Specifically, Plaintiff has not demonstrated a likelihood of success on the merits of her FMLA claim or that irreparable harm will occur in the absence of immediate judicial intervention. Consequently, for the reasons set forth above, Plaintiff's Motion for Preliminary Injunction will be DENIED. An appropriate order follows.

*[signature]*
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties